JAP:AMC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-09-1172

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

REYNALDO REYES, and
RAFAEL SANCHEZ,

Defendants.

- - - - - - - - - - - - - - - - -X

COMPLAINT

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

BRIAN LASKOWSKI, being duly sworn, deposes and states that he is a Detective with the Suffolk County Police Department, cross-designated as a Special Agent with the Drug Enforcement Administration (the "DEA"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between July 2009 and November 2009, within the Eastern District of New York and elsewhere, the defendants RAFAEL SANCHEZ, and REYNALDO REYES, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance containing cocaine base, a Schedule II controlled substance, in an amount of 50 grams or more, in violation of Section 841(a)(1) of Title 21 of the United States Code.

(Title 21, United States Code, Sections 846 and

841(b)(1)(A)(iii); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. The facts set forth in this affidavit are based in part on information that I have learned from review of written documents prepared by, and conversations with, members of law enforcement. Furthermore, in the portions below that describe surveillance, all surveillance was conducted by myself and officers assigned to either the DEA or another law enforcement agency. The observations of the other involved law enforcement agents have been related to me to supplement the activities that I personally observed. Unless otherwise indicated, I have not distinguished between the events that I have personally observed and those that were related to me by others.

2. In or about July 2009, law enforcement was advised from a confidential source ("CS"), whose information has proven to be reliable in this investigation, that the defendant REYNALDO REYES was looking to sell cocaine. The CS reported that the CS had called the defendant REYNALDO REYES in or about JULY 2009. During this conversation, in substance and in part, REYES informed the CS that REYES and REYES'S brother could sell two

---

[1] Because the purpose of this affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

ounces of cocaine base to the CS.

3. In furtherance of this investigation and at the instruction of law enforcement, in or about July 2009 the CS contacted the defendant REYES over the telephone. During this conversation, which was recorded with the consent of the CS, the two agreed to meet at a location in Queens, New York in order to conduct the pending transaction.

4. On or about July 23, 2009, in Queens, New York, law enforcement officers observed the defendant REYES meet with the CS. During the ensuing meeting, which was recorded with the consent of the CS, REYES discussed the pending transaction with the CS. The CS handed REYES $2,100.00 in United States currency. REYES informed the CS that REYES'S brother only had one ounce of cocaine base available and returned $1,060.00 in United States currency to the CS.

5. Shortly thereafter, defendant RAFAEL SANCHEZ arrived in a Mitsubishi Gallant and met with the CS. After some discussion, the CS and SANCHEZ entered the same Mitsubishi Gallant and drove a short distance to a parking lot located in Queens, New York. The defendant REYES entered a Hyundai Elantra and followed the Gallant to the same parking lot. Once at the parking lot, REYES exited the Elantra and entered the same Gallant in which the CS and SANCHEZ were located.

6. Inside the Gallant, the defendant SANCHEZ handed

the CS a quantity of cocaine base. At the same time, SANCHEZ explained to the CS that SANCHEZ could get another ounce of cocaine base later that day. The CS, REYES and SANCHEZ also discussed a future sale of half of a kilogram of cocaine base. The CS then left the Gallant and met with law enforcement agents to whom the CS handed the above-described cocaine base. A laboratory report confirmed that the substance purchased by the CS on July 23, 2009 tested positive for cocaine base with a net weight of 27.4 grams.

7. In or about August 2009, at the direction of law enforcement, the CS contacted REYES over the telephone. During several telephone conversations, which were recorded with the consent of the CS, the two agreed to meet at a store located in Central Islip, New York in order to conduct the pending transaction.

8. On or about August 26, 2009, in Central Islip, New York, law enforcement officers observed the CS enter a store. Once inside the store the CS met with REYES. Inside the store, REYES told the CS to meet REYES in a bathroom inside the store. The CS and REYES met inside a bathroom inside said store. The meeting was audio-recorded with the consent of the CS. Once inside the bathroom, the CS handed REYES $1,060.00 in United States currency. REYES counted the currency and handed the CS a knotted plastic bag containing cocaine base. Before leaving the

bathroom, the CS and REYES discussed the future purchase of half of one kilogram of cocaine base.

9. Shortly thereafter, law enforcement agents observed REYES leaving the store and entering the same Mitsubishi Gallant that was present during the above-mentioned July 23, 2009 sale of cocaine base. When the CS left the store, the CS met with law enforcement agents in the parking lot of the store. The CS handed the above-described cocaine base to the agents. A laboratory report confirmed that the substance purchased by the CS on August 26, 2009 tested positive for cocaine base with a net weight of 27.8 grams.

10. In or about October 2009 the CS reported that the CS had contacted REYES over the telephone regarding the purchase of cocaine base. Afterwards, the CS placed another telephone call to REYES, which was recorded with the consent of the CS. REYES and the CS agreed to meet at a location in Queens, New York in order to conduct the pending transaction.

11. On or about October 26, 2009, in Queens, New York, law enforcement officers observed the CS enter the location. Less than half an hour later law enforcement agents observed REYES arrive at the location in the same Hyundai Elantra from the above-described July 23, 2009 cocaine base sale. REYES was observed by law enforcement agents entering the location and meeting with the CS. The meeting was audio-recorded with the

consent of the CS. The CS handed REYES $1,094.00 in United States currency in exchange for a quantity of cocaine base. REYES was then observed by law enforcement agents leaving the location in the above-described Hyundai Elantra. When the CS left the location, the CS met with law enforcement agents in the parking lot of the location. The CS handed the above-described cocaine base to the agents. A laboratory report confirmed that the substance purchased by the CS on October 26, 2009 tested positive for cocaine base with a net weight of 27.1 grams.

12. In or about November 2009 the CS reported that the CS had been contacted by SANCHEZ over the telephone regarding the previously discussed purchase of one-half kilogram of cocaine base. Afterwards, the CS placed another telephone call to SANCHEZ, which was monitored by law enforcement with the consent of the CS. SANCHEZ and the CS agreed to meet the same day to conduct the pending transaction.

13. On or about November 24, 2009, in Massapequa, New York, the CS placed several telephone calls to SANCHEZ, which was monitored by law enforcement with the consent of the CS. SANCHEZ discussed the location of the sale and they agreed to meet at a shopping center in Massapequa, New York.

14. Shortly after the last call between the CS and SANCHEZ, law enforcement officers observed SANCHEZ and REYES arrive at the shopping center located in Massapequa, New York in

the same Hyundai Elantra from the above-described July 23, 2009 and October 26, 2009 cocaine base sales. SANCHEZ was observed by law enforcement agents entering the shopping center carrying a white plastic bag. Inside a store in the shopping center, SANCHEZ told the CS to meet SANCHEZ in a bathroom inside the store. The CS and SANCHEZ met inside a bathroom inside said store. The meeting was audio-recorded with the consent of the CS. Once inside the bathroom, SANCHEZ handed the CS the white plastic bag, which contained a quantity of cocaine base inside a shoebox. The CS inspected the contents of the shoebox contained in the white plastic bag. The CS stated in substance to SANCHEZ that the CS had to go back outside to get the money for SANCHEZ. The CS returned the white plastic bag containing the cocaine base to SANCHEZ. The CS and SANCHEZ subsequently exited the bathroom.

15. Shortly thereafter, law enforcement agents observed SANCHEZ carrying the white plastic bag, leaving the shopping center, and entering the same Hyundai Elantra. Law enforcement agents observed the Hyundai Elantra begin to drive within the parking lot. Law enforcement agents stopped the Hyundai Elantra and arrested the defendants SANCHEZ and REYES who were inside the vehicle. Law enforcement agents recovered the shoebox containing the cocaine base inside the white plastic bag from inside the vehicle.

16. Based upon my training and experience as a

narcotics investigator the substance recovered from the shoebox appeared to be crack cocaine. The substance field-tested positive for cocaine with a gross weight over five hundred grams. The field test for cocaine base was inconclusive.

WHEREFORE, your deponent respectfully requests that the defendants REYNALDO REYES, and RAFAEL SANÇHEZ, be dealt with according to law.

BRIAN LASKOWSKI
Detective, SUFFOLK COUNTY PD

Sworn to before me this
25th day of November

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK